**LANE & NACH, P.C.**
2001 E. Campbell Ave., Suite 103
Phoenix, AZ 85016
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003
Stuart B. Rodgers  –  025720
Helen K. Santilli – 032441
Email: stuart.rodgers@lane-nach.com
Email: helen.santilli@lane-nach.com

*Attorney for Eric M. Haley, Plaintiff*

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | (Chapter 7 Case) |
| MARTIN ANDREW TARADEJNA, | No. 2:23-bk-04171-BKM |
| Debtor. | *Adv. No.:* |

ERIC M. HALEY, Chapter 7 Trustee,

Plaintiff,

vs.

CODA DESIGN + BUILD, LLC dba CODA MANAGEMENT GROUP, an Illinois limited liability company; PLATFORM II LAWNDALE LLC, dba ONE STOP SELF STORAGE CHICAGO, an Illinois limited liability company; CODA HOLDING LLC, an Illinois limited liability company; CODA HOLDING II LLC, an Illinois limited liability company; CODA HOLDING III, LLC, an Illinois limited liability company; CODA HOLDING IV LLC, an Illinois limited liability company; CHIW LLC, an Illinois limited liability company; PLATFORM II WISCONSIN LLC, a Wisconsin limited liability company; PLATFORM, II SUPERIOR LLC, an Illinois limited liability company; PLATFORM III – FLOYD LLC dba ONE STOP SELF STORAGE LOUISVILLE, an Illinois limited liability company; PLATFORM III THIRD LLC dba ONE STOP SELF STORAGE - THIRD, an Illinois limited liability company; PLATFORM III LANSING LLC dba One Stop Self Storage Lansing, LLC, an Illinois limited liability company; CODA

**COMPLAINT**

**DECLARATORY RELIEF THAT INTERESTS ARE PROPERTY OF ESTATE**
**(11 U.S.C. §§ 541 AND 542)**

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**(A.R.S. § 44-1004(A)(1))**

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**(A.R.S. § 44-1004(A)(2))**

**TURN OVER OF PROPERTY**
**(11 U.S.C. §§ 541 AND 542)**

OPPORTUNITY FUND LLC, an Illinois limited liability company; CODA OPPORTUNITY FUND II, LLC, an Illinois limited liability company; SCOTT KRONE, a married man; and JAMES LEHMANN, a married man,

Defendants.

**AVOIDANCE OF POST-PETITION TRANSFER OF REAL PROPERTY (11 U.S.C. §§ 549, 550, and 551)**

Eric M. Haley, Chapter 7 Trustee and Plaintiff herein ("**Plaintiff**"), by and through undersigned, for his Complaint against Coda Design + Build, LLC dba Coda Management Group, Platform II Lawndale LLC dba One Stop Self Storage Chicago, Coda Holding LLC, Coda Holding II LLC, Coda Holding III LLC, Coda Holding IV LLC, CHIW LLC, Platform II Wisconsin LLC, Platform II Superior LLC, Platform III – Floyd LLC dba One Stop Self Storage Louisville, Platform III Third LLC dba One Stop Self Storage - Third, Platform III Lansing dba One Stop Self Storage Lansing LLC[1], CODA Opportunity Fund LLC, Coda Opportunity Fund II LLC (collectively, "**Entities**"), Scott Krone ("**Krone**"), and James Lehman ("**Lehmann**") respectfully alleges as follows:

## PARTIES

1.      Martin Andrew Taradenja ("**Debtor**") filed his voluntary Petition under Chapter 7 of Title 11 of the United States Code on June 22, 2023 ("**Petition Date**").

2.      Plaintiff is the duly appointed acting Trustee of the Chapter 7 Estate.

3.      Coda Design + Build, LLC dba Coda Management Group ("**Coda Design**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone is the sole manager.

4.      Platform II Lawndale LLC dba One Stop Self Storage Chicago ("**Platform Lawndale**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone is the sole manager.[2]

---

[1] Also dba Northside Self Storage LLC.
[2] Platform Lawndale filed a Chapter 11 bankruptcy in the Northern District of Illinois on July 11, 2022 at case number 22-07668. However, the bankruptcy was dismissed on February 14, 2024 and terminated on July 11, 2024. Given the case has terminated, there is no automatic stay.

2

5. Coda Holding LLC ("**Coda Holding**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone, James Lehmann, and the Debtor are the managers.

6. Coda Holding II LLC ("**Coda Holding II**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone and James Lehmann are the managers.

7. Coda Holding III LLC ("**Coda Holding III**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone and James Lehmann are the managers.

8. Coda Holding IV LLC ("**Coda Holding IV**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone and James Lehmann are the managers.

9. CHIW LLC ("**CHIW**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Scott Krone and James Lehmann are the managers.

10. Platform II Wisconsin LLC ("**Platform Wisconsin**") is a Wisconsin limited liability company. Upon information and belief, Scott Krone and James Lehman are the managers.

11. Platform II Superior LLC ("**Platform Superior**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding II is the manager.

12. Platform III – Floyd LLC dba One Stop Self Storage Louisville ("**Platform Floyd**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding III is the manager.

13. Platform III - Third LLC dba One Stop Self Storage - Third ("**Platform Third**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding II and Yellow Hat Holdings, LLC are the managers.

14. Platform - III Lansing LLC dba One Stop Self Storage Lansing, LLC ("**Platform Lansing**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding IV and Maven Property Holdings.

15. Coda Opportunity Fund LLC ("**COF**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding II is the manager.

16. Coda Opportunity Fund II LLC ("**COF**") is an Illinois limited liability company. Pursuant to the records maintained by the Illinois Secretary of State, Coda Holding is the manager.

17. Upon information and belief, Scott Krone residents in Cook County, Illinois and is a resident of Illinois.

18. Upon information and belief, James Lehmann reside in Cook County, Illinois and is a resident of Illinois.

19. Upon information and belief, Defendants[1] are either insider of the Debtor pursuant to 11 U.S.C. § 101(31)(A)(ii)-(iv) or are or non-statutory insiders of the Debtor.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b).

21. Pursuant to Federal Rule of Bankruptcy Procedure 7001, a proceeding to recover money or property is governed by Part VII of the Federal Rules of Bankruptcy Procedure.

22. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (H).

23. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

24. Plaintiff consents to the jurisdiction of this Court pursuant to Federal Rule of Bankruptcy Procedure 7008.

25. Plaintiff is permitted to commence this adversary proceeding on behalf of the Estate pursuant to Federal Rule of Bankruptcy Procedure 6009.

26. All acts giving rise to the cause of action in this Complaint occurred or caused events to occur in the State of Arizona.

## GENERAL ALLEGATIONS

27. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

---

[1] "**Defendants**" collectively refers to Krone, Lehmann, and the Entities.

28.   Upon information and belief, Debtor, Krone, and Lehmann were engaged in various business endeavors pre-petition.

29.   Upon information and belief, Krone, Lehman, and the Debtor are or were members and managers of the Entities.

30.   Upon information and belief, the Debtor held the following interests in the Entities:

   a.  Coda Design: unknown

   b.  Platform Lawndale: 23.3%

   c.  Coda Holding: unknown

   d.  Coda Holding II: 40.50%

   e.  Coda Holding III: 19.0%

   f.  Coda Holding IV: unknown

   g.  CHIW: 40.50%

   h.  Platform Wisconsin: 18%

   i.  Platform Floyd: unknown

   j.  Platform Superior: 21%

   k.  Platform Third: 23.3%

   l.  Platform Lansing: 14.7%

   m. Opportunity Fund: unknown

   n.  Opportunity Fund II: unknown

31.   Upon information and belief, on or around November 8, 2022 (7 months and 14 days pre-petition), the Debtor, Krone, Lehmann, and the Entities executed the *Resignation Agreement* ("**Agreement**") whereby Debtor would, *inter alia*: (1) resign as an employee and manager of any and all of the Entities; (2) transfer all right, title, and interest in the Entities to Defendants; and (3) in exchange, Krone and Lehmann would release the Debtor from personal guarantees and Entity liabilities  and "continue the business without interference of the involvement" of the Debtor. (Exhibit A).

5

32.     Upon information and belief, a material inducement for the transfer of Debtor's interests in the Entities to the Defendants was that in exchange the Debtor would be released from the Entity Liabilities (as defined below).

33.     Upon information and belief, the Agreement sets forth the following with regard to the Debtor's transfer of his interests in the Entities to the Defendants:

**a.  <u>Coda Design</u>**

    i.   Debtor transferred his interest in Coda Design, including his role as director. (Ex. A, pg. 3, ¶¶ 8.1, 9.2).

    ii.  Defendants did not believe any documentation was necessary to transfer this interest. (Ex. A, pg. 3, ¶ 8.2).

**b.  <u>Platform Lawndale</u>**

    i.   Debtor transferred his interest in Platform Lawndale, which included an interest in an operating storage facility. (Ex. A, pg. 3, ¶ 10.1). Despite the transfer of his interest in Platform Lawndale to Defendants, under the Agreement, the Debtor still needed to supply "any and all required personal documents requested by lenders" to aid in the ongoing Chapter 11 bankruptcy of Platform Lawndale. (Ex. A, pg. 3, ¶ 10.2). Defendants were aware "any material change in ownership or financial condition" (like Debtor's transfer of his interest to Defendants and accompanying resignation), "may cause the loan to be in default", therefore Defendants, despite the transfer of Debtor's interest to Defendants, required Debtor to provide personal financial statements and taxes to lenders and sign documents on behalf of Platform Lawndale as necessary. (Ex. A, pg. 3, ¶ 10.3-10.4).

    ii.  Despite the foregoing, Debtor transferred all managerial, operations, membership rights, managerial rights, economic rights, financial interests, rights to future revenue, rights to proceeds, rights to distributions, and all other interest or rights in or relating to Platform Lawndale "in exchange of release

from all personal guarantees or other financial obligations." (Ex. A, pg. 3, ⁋ 10.4).

iii. Despite the transfer of his interests in Platform Lawndale to Defendants, Debtor was still required to aid in the refinance of the real property. (Ex. A, pg. 4, ⁋ 10.5).

iv. Defendants agree that "documentation to finalize the removal of [Debtor's] role as manager is necessary to effectuate the final resignation." (Ex. A, pg. 4, ⁋⁋ 10.5-10.6).

v. Defendants were to "remove [Debtor] from the loan and loan guaranty in due course of the company" but failed to do so. (Ex. A, pg. 4, ⁋ 10.7).

vi. Defendants concede that the transfer of Debtor's interest in Platform Lawndale could only occur simultaneously with removal of Debtor from the loan guaranty. (Ex. A, pg. 4, ⁋ 10.7).

c. **Platform Wisconsin**

i. Debtor has an ownership interest in Platform Wisconsin through his ownership interest as manager of CHIW. (Ex. A, pg. 4, ⁋ 11.1).

ii. Upon information and belief, Platform Wisconsin owns an operating storage facility which was in a "transition period" in November of 2022. (Ex. A, pg. 4, ⁋ 11.1).

iii. The Defendants understood "any material change of ownership or financial condition may cause the loan to be in default." (Ex. A, pg. 4, ⁋ 11.1). Therefore, Defendants continued to require the Debtor to provide personal financial statements and taxes to the lender, sign documents on behalf of Platform Wisconsin, and keep the loan in good standing. (Ex. A, pg. 4, ⁋ 11.1). Debtor had to cooperate in the management of Platform Wisconsin to comply with lender requirements, despite his relinquishing of managerial duties, operational duties, and role with related entities. (Ex. A, pg. 4, ⁋ 11.2). Debtor expressly transferred "all membership rights, managerial rights, economic

7

interests, financial interests, right to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform Wisconsin…in exchange of release from all personal guarantee or other financial obligations." (Ex. A, pg. 4, ¶ 11.2).

    iv. Defendants concede that the transfer of Debtor's interest in Platform Wisconsin could only occur simultaneously with removal of Debtor from the loan guaranty. (Ex. A, pg. 5, ¶ 11.5).

**d. Platform Superior**

    i. Debtor has an ownership interest in Platform Superior through his ownership interest as manager of Coda Holding II. (Ex. A, pg. 5, ¶ 12.1).

    ii. Upon information and belief, Platform Superior owns an operating storage facility which was in a "transition period" in November of 2022. (Ex. A, pg. 5, ¶ 12.1).

    iii. The Defendants understood "any material change of ownership or financial condition may cause the loan to be in default." (Ex. A, pg. 5, ¶ 12.1). Therefore, Defendants continued to require the Debtor to provide personal financial statements and taxes to the lender, sign documents on behalf of Platform Wisconsin, and keep the loan in good standing. (Ex. A, pg. 5, ¶ 12.1). Debtor had to cooperate in the management of Platform Superior to comply with lender requirements, despite his relinquishing of managerial duties, operational duties, and role with related entities. (Ex. A, pg. 5, ¶ 12.1). Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, right to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform Superior…in exchange of release from all personal guarantee or other financial obligations." (Ex. A, pg. 5, ¶ 12.2).

iv. Defendants concede that the transfer of Debtor's interest in Platform Superior could only occur simultaneously with removal of Debtor from the loan guaranty. (Ex. A, pg. 6, ¶ 12.5).

**e.  Platform Third**

i. Debtor has an ownership interest in Platform Third through his ownership interest as manager of Coda Holding III. (Ex. A, pg. 6, ¶ 13.1).

ii. Upon information and belief, Platform Third owns an operating storage facility which was in a "transition period" in November of 2022. (Ex. A, pg. 6, ¶ 13.1).

iii. The Defendants understood "any material change of ownership or financial condition may cause the loan to be in default." (Ex. A, pg. 6, ¶ 13.1). Therefore, Defendants continued to require the Debtor to provide personal financial statements and taxes to the lender, sign documents on behalf of Platform Third, and keep the loan in good standing. (Ex. A, pg. 6, ¶ 13.1). Debtor had to cooperate in the management of Platform Third to comply with lender requirements, despite his relinquishing of managerial duties, operational duties, and role with related entities. (Ex. A, pg. 6, ¶ 13.1). Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, right to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform Third…in exchange of release from all personal guarantee or other financial obligations." (Ex. A, pg. 6, ¶ 13.2).

iv. Defendants concede that the transfer of Debtor's interest in Platform Third could only occur simultaneously with removal of Debtor from the loan guaranty. (Ex. A, pg. 7, ¶ 13.5).

**f.  Platform Floyd**

i. Debtor has an ownership interest in Platform Floyd through his ownership interest as manager of Coda Holding IV. (Ex. A, pg. 7, ¶ 14.1).

9

ii. Upon information and belief, Platform Floyd owns an operating storage facility which was in a "transition period" in November of 2022. (Ex. A, pg. 7, ¶ 14.1).

iii. The Defendants understood "any material change of ownership of financial condition may cause the loan to be in default." (Ex. A, pg. 7, ¶ 14.1). Therefore, Defendants continued to require the Debtor to provide personal financial statements and taxes to the lender, sign documents on behalf of Platform Third, and keep the loan in good standing. (Ex. A, pg. 7, ¶ 14.1). Debtor had to cooperate in the management of Platform Floyd to comply with lender requirements, despite his relinquishing of managerial duties, operational duties, and role with related entities. (Ex. A, pg. 7, ¶ 14.1). Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, right to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform Floyd…in exchange of release from all personal guarantee or other financial obligations." (Ex. A, pg. 7, ¶ 14.2).

iv. Defendants concede that "documentation to finalize the removal of [Debtor] as manager is necessary to effectuate the final resignation. (Ex. A, pg. 8, ¶ 14.3).

g. **Platform Lansing**

i. Debtor has an ownership interest in Platform Lansing through his ownership interest as manager of Coda Holding IV. (Ex. A, pg. 8, ¶ 15.1).

ii. Upon information and belief, Platform Lansing owns an operating storage facility which was in a "transition period" in November of 2022. (Ex. A, pg. 8, ¶ 15.1).

iii. The Defendants understood "any material change of ownership of financial condition may cause the loan to be in default." (Ex. A, pg. 8, ¶ 15.1). Therefore, Defendants continued to require the Debtor to provide personal

financial statements and taxes to the lender, sign documents on behalf of Platform Third, and keep the loan in good standing. (Ex. A, pg. 8, ¶ 15.1). Debtor had to cooperate in the management of Platform Lansing to comply with lender requirements, despite his relinquishing of managerial duties, operational duties, and role with related entities. (Ex. A, pg. 8, ¶ 15.1). Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, right to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform Lansing…in exchange of release from all personal guarantee or other financial obligations." (Ex. A, pg. 8, ¶ 15.2).

iv. Defendants concede that "documentation to finalize the removal of [Debtor] as manager is necessary to effectuate the final resignation. (Ex. A, pg. 8, ¶ 15.3).

h. **Coda Holding**

i. Debtor has an ownership interest in Coda Holding, which was former the manager of Platform Wisconsin, which was replaced by CHIW. (Ex. A, pg. 9, ¶ 16.1).

ii. Debtor has to "cooperate in management" of Coda Holding to the extent necessary to comply with lender requirements. (Ex. A, pg. 9, ¶ 16.2).

iii. Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to [Coda Holding] in exchange of release from all personal guarantees or other financial obligations. [Debtor] further agrees to transfer his managerial and economic shares to Krone and Lehmann." (Ex. A, pg. 9, ¶ 16.2).

i. **Coda Holding II**

i. Debtor has an ownership interest in Coda Holding II. (Ex. A, pg. 9, ¶ 17.1).

ii.  Debtor has to "cooperate in management" of Coda Holding to the extent necessary to comply with lender requirements. (Ex. A, pg. 10, ¶ 17.2).

iii.  Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to [Coda Holding] in exchange of release from all personal guarantees or other financial obligations. [Debtor] further agrees to transfer his managerial and economic shares to Krone and Lehmann." (Ex. A, pg. 10, ¶ 17.2).

**j.  <u>Coda Holding III</u>**

i.  Debtor has an ownership interest in Coda Holding III. (Ex. A, pg. 10, ¶ 18.1).

ii.  Debtor has to "cooperate in management" of Coda Holding to the extent necessary to comply with lender requirements. (Ex. A, pg. 10, ¶ 18.2).

iii.  Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to [Coda Holding] in exchange of release from all personal guarantees or other financial obligations. [Debtor] further agrees to transfer his managerial and economic shares to Krone and Lehmann." (Ex. A, pg. 10, ¶ 18.2).

**k.  <u>Coda Holding IV</u>**

i.  Debtor has an ownership interest in Coda Holding IV. (Ex. A, pg. 11, ¶ 19.1).

ii.  Debtor has to "cooperate in management" of Coda Holding to the extent necessary to comply with lender requirements. (Ex. A, pg. 11, ¶ 19.2).

iii.  Debtor expressly transferred "all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to [Coda Holding] in exchange of release from all personal guarantees or other financial obligations. [Debtor] further agrees to transfer his managerial and economic shares to Krone and Lehmann." (Ex. A, pg. 11, ¶ 19.2).

34. Upon information and belief, Debtor had an interest in all Entities (not just delineated in those above) and under the Agreement, Debtor's interest would be transferred to Defendants, with such transfer conditioned upon the release of all personal liabilities of the Debtor in connection with any of the Entities' debts and obligations.

35. In essence, Debtor transferred his valuable interests in the Entities to the Defendants in exchange to be released from the Entities' liabilities.

36. The release was a condition precedent to the transfer of the Debtor's interest.

37. Upon information and belief, Defendants failed to provide the bargained for consideration to Debtor when they failed to take any steps to remove Debtor from any of the Entities' liabilities.

38. Upon information and belief, Defendants concede they took no steps to remove the Debtor from any of the Entities' liabilities.

39. Upon information and belief, Defendants failed to remove the Debtor from, *inter alia*, the following liabilities:

| Creditor | Citation | Amount |
| --- | --- | --- |
| Amy Beaudry | BK DE 9, pg. 18, ¶ 4.6 | Unknown |
| Andrew Kabatchnick/Kabatchnick Enterprises | BK DE 9, pg. 18, ¶ 4.7 | Unknown |
| Andrew Kabatchnick/RHAK LLC | BK DE 9, pg. 19, ¶ 4.8 | Unknown |
| Anja Wehrmann and Chad Berry | BK DE 9, pg. 19, ¶ 4.9 | Unknown |
| Art Zhang | BK DE 9, pg. 19, ¶ 4.10 | Unknown |
| Ben Phillips | BK DE 9, pg. 20, ¶ 4.11 | Unknown |
| BLC Companies | BK DE 9, pg. 20, ¶ 4.12 | $4,595,000.00 |
| Brian NG | BK DE 9, pg. 20, ¶ 4.13 | Unknown |
| Bronson Hill | BK DE 9, pg. 21, ¶ 4.14 | Unknown |
| Caroline Dellaway | BK DE 9, pg. 21, ¶ 4.15 | Unknown |
| Caya Hefner | BK DE 9, pg. 21, ¶ 4.16 | Unknown |
| Chaneravy Thach | BK DE 9, pg. 22, ¶ 4.17 | Unknown |
| Chaneravy Thach | BK DE 9, pg. 22, ¶ 4.18 | Unknown |
| Chester and Wendy Lee | BK DE 9, pg. 22, ¶ 4.19 | Unknown |
| Chris Van de Vaart | BK DE 9, pg. 23, ¶ 4.20 | Unknown |
| Christi McCarthy | BK DE 9, pg. 23, ¶ 4.21 | Unknown |
| Daniel Fullmer | BK DE 9, pg. 23, ¶ 4.22 | Unknown |
| Daniel Fullmer/Eleven Vales Investing, LLC | BK DE 9, pg. 24, ¶ 4.23 | Unknown |
| Dave Lin | BK DE 9, pg. 24, ¶ 4.24 | Unknown |
| Dave Nickel | BK DE 9, pg. 24, ¶ 4.25 | Unknown |
| Dave Saxton | BK DE 9, pg. 25, ¶ 4.26 | Unknown |
| Don Eimerbank | BK DE 9, pg. 25, ¶ 4.27 | Unknown |
| Don Price/Specialized IRA Services | BK DE 9, pg. 25, ¶ 4.28 | Unknown |
| Don Price/Specialized Trust Group LL | BK DE 9, pg. 26, ¶ 4.29 | Unknown |
| Doug Causey | BK DE 9, pg. 26, ¶ 4.30 | Unknown |
| Doug Prahst | BK DE 9, pg. 26, ¶ 4.31 | Unknown |

| | | | |
|---|---|---|---|
| Elizabeth Ly | BK DE 9, pg. 27, ¶ 4.33 | Unknown |
| Eric Geyer | BK DE 9, pg. 27, ¶ 4.34 | Unknown |
| Eric Knecht | BK DE 9, pg. 28, ¶ 4.35 | Unknown |
| Feng Dai | BK DE 9, pg. 28, ¶ 4.36 | Unknown |
| Gary Kimmelman | BK DE 9, pg. 28, ¶ 4.37 | Unknown |
| Genisys Credit Union | BK DE 9, pg. 29, ¶ 4.38 | $1,718,834.00 |
| GreenLake Real Estate Fund LLC | BK DE 9, pg. 29, ¶ 4.39/POC 8 | $12,353,934.80 |
| Guy Ferraiolo | BK DE 9, pg. 29, ¶ 4.40 | Unknown |
| Hardy Hodges | BK DE 9, pg. 30, ¶ 4.41/POC 9 | Unknown |
| Hardy Hodges | BK DE 9, pg. 30, ¶ 4.42 | Unknown |
| Iqbal Khan | BK DE 9, pg. 30, ¶ 4.43 | Unknown |
| James Lehmann | BK DE 9, pg. 31, ¶ 4.44 | Unknown |
| Jason Fahle | BK DE 9, pg. 31, ¶ 4.45 | Unknown |
| Jaspreet Baveja | BK DE 9, pg. 31, ¶ 4.46 | Unknown |
| Jerry Chapman | BK DE 9, pg. 32, ¶ 4.47 | Unknown |
| JJ McCarthy | BK DE 9, pg. 32, ¶ 4.48 | Unknown |
| JJ McCarthy | BK DE 9, pg. 32, ¶ 4.49 | Unknown |
| JJ McCarthy | BK DE 9, pg. 32, ¶ 4.50 | Unknown |
| John Citringno | BK DE 9, pg. 33, ¶ 4.51 | Unknown |
| John Hager | BK DE 9, pg. 33, ¶ 4.52 | Unknown |
| Joseph Downs | BK DE 9, pg. 34, ¶ 4.53 | Unknown |
| Josh Eimerbrink | BK DE 9, pg. 34, ¶ 4.54 | Unknown |
| Josh Eimerbrink | BK DE 9, pg. 34, ¶ 4.55 | Unknown |
| Justin Gladiuex | BK DE 9, pg. 35, ¶ 4.56 | Unknown |
| Kathy Eimerbrink | BK DE 9, pg. 35, ¶ 4.57 | Unknown |
| Kathy Eimerbrink | BK DE 9, pg. 35, ¶ 4.58 | Unknown |
| Ken Ly | BK DE 9, pg. 36, ¶ 4.59 | Unknown |
| Kerry Ritland | BK DE 9, pg. 36, ¶ 4.60 | Unknown |
| Kerry William Ritland & Faith Denise Szafranski Living Trust Dated 9/30/29 | BK DE 9, pg. 36, ¶ 4.61/POC 7 | $450,000.00 |
| Kevin Brown | BK DE 9, pg. 37, ¶ 4.62 | Unknown |
| Kirby Langley | BK DE 9, pg. 37, ¶ 4.63 | Unknown |
| Leslie Marquad | BK DE 9, pg. 37, ¶ 4.64 | Unknown |
| Liberty National Bank | BK DE 9, pg. 38, ¶ 4.65 | $3,750,000.00 |
| Lise Godin | BK DE 9, pg. 38, ¶ 4.67 | Unknown |
| Liz Giger | BK DE 9, pg. 39, ¶ 4.68 | Unknown |
| Lynda Mercurio | BK DE 9, pg. 39, ¶ 4.69 | Unknown |
| Marc Ausman | BK DE 9, pg. 39, ¶ 4.70 | Unknown |
| Mark Brennan | BK DE 9, pg. 40, ¶ 4.71 | Unknown |
| Marti Lichman | BK DE 9, pg. 40, ¶ 4.72 | Unknown |
| Matt Franklin | BK DE 9, pg. 40, ¶ 4.73 | Unknown |
| Michael Saberniak | BK DE 9, pg. 41, ¶ 4.74 | Unknown |
| Mike and Julie Gillespie | BK DE 9, pg. 41, ¶ 4.75 | Unknown |
| Minna Folkman | BK DE 9, pg. 41, ¶ 4.76 | Unknown |
| Monisha Nabar | BK DE 9, pg. 42, ¶ 4.77 | Unknown |
| Monisha Nabar | BK DE 9, pg. 42, ¶ 4.78 | Unknown |
| Naveed Qureshi | BK DE 9, pg. 42, ¶ 4.79 | Unknown |
| Nick Manganaro | BK DE 9, pg. 43, ¶ 4.80 | Unknown |
| Nickhil Nabar | BK DE 9, pg. 43, ¶ 4.81 | Unknown |
| Old National Bank | BK DE 9, pg. 43, ¶ 4.82 | $5,477,212.14 |
| Phil Yan | BK DE 9, pg. 44, ¶ 4.83 | Unknown |
| Phil Yan | BK DE 9, pg. 44, ¶ 4.84 | Unknown |

14

| | | |
|---|---|---|
| Reena Mittal | BK DE 9, pg. 44, ¶ 4.85 | Unknown |
| Richard Banach | BK DE 9, pg. 45, ¶ 4.86 | Unknown |
| Rick Davis | BK DE 9, pg. 45, ¶ 4.87/POC 10 | $150,000.00 |
| Rick Reihm | BK DE 9, pg. 45, ¶ 4.88 | Unknown |
| Ron Borowski | BK DE 9, pg. 46, ¶ 4.89 | Unknown |
| Ryan Regan | BK DE 9, pg. 46, ¶ 4.90 | Unknown |
| Ryder Meehan | BK DE 9, pg. 46, ¶ 4.91 | Unknown |
| Scott Krone | BK DE 9, pg. 47, ¶ 4.92 | Unknown |
| Steve LaBue | BK DE 9, pg. 47, ¶ 4.93 | Unknown |
| Steve Melervey | BK DE 9, pg. 47, ¶ 4.94 | Unknown |
| Steve Pi | BK DE 9, pg. 48, ¶ 4.95 | Unknown |
| Toby Perry and Christina Chen | BK DE 9, pg. 48, ¶ 4.96 | Unknown |
| Tony Lin | BK DE 9, pg. 48, ¶ 4.97 | Unknown |
| Troy Zsofka | BK DE 9, pg. 49, ¶ 4.98 | Unknown |
| Coda Management Group | POC 6 | $21,092,096.40 |

40. Excluding Coda's $21,092,096.40 Proof of Claim 6, it appears Defendants neglected to take the necessary steps under the Agreement to release Debtor from the Entities' liabilities in the amount of not less than $28,494,980.90 ("**Entity Liability**").

41. Upon information and belief, Defendants did not release Debtor from the Entity Liability in exchange for his transfer of his interest in the Entities to Defendants.

**COUNT ONE**
**DECLARATORY RELIEF THAT INTERESTS ARE PROPERTY OF ESTATE**
**[11 U.S.C. §§ 541 AND 542]**

42. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

43. Based on the express language of the Agreement, the transfer of the Debtor's interests in the Entities to Defendants were conditioned upon a complete release from the Entity Liability.

44. Upon information and belief, Defendants failed to release Debtor from the Entity Liability as evidenced by the above table delineating Debtor's scheduled claims, Proofs of Claim 7 through 10, and Defendant's own Proof of Claim 6.

45. The Defendants, having failed to meet the condition precedent, did not receive the Debtor's interests pursuant to the Agreement.

46. Given Defendants failure to comply with their obligations under the Agreement, the Plaintiff seeks the entry of a judgment determining the Debtor's interests in the Entities are property of the Estate pursuant to 11 U.S.C. § 541.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendants (jointly and severally) as follows:

    A. For judgment determining the Debtor's interests in the Entities are property of the Estate pursuant to 11 U.S.C. § 541;

    B. For reasonable attorney fees associated with bringing this action;

    C. For costs allowed by law; and

    D. For such other relief the Court deems just and property.

**COUNT TWO**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

47. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

48. Pursuant to 11 U.S.C. § 548(a)(1)(A):

> The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

>     (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted

49. Upon information and belief, Debtor transferred his interest in the Entities to Defendants in exchange for a complete and total release of the Entity Liabilities.

50. Had the transfer not been made, the Debtor's interest in the Entities would have been property of the Bankruptcy Estate. *Diamond v. Hogan Lovells US LLP*, 883 F.3d 1140, 1147 (9th Cir. 2018), *certified question answered*, 224 A.3d 1007 (D.C. 2020) citing *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

51. Upon information and belief, Debtor made the transfer to stave off legitimate creditors of the Debtor by putting the interest in the Entities out of reach of Debtor's creditors; whether Debtor did this with the intent to defraud creditors of payments or simply to obtain enough time to restore the Debtor's affairs is irrelevant. The foregoing transfer had the impact of hindering and

delaying collections to Debtor's legitimate creditors.

52. A transfer is fraudulent as to a creditor if the Debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." A.R.S. § 44-1004(A)(1).

53. In determining whether a transfer is avoidable as a fraudulent transfer, the Court must determine whether the Debtor's transfer hindered or delayed a creditor of the Debtor. *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part,* 551 F.3d 1092 (9th Cir. 2008).

54. Given direct evidence of fraud is uncommon, the Court may turn to inferential circumstances consistent with the requisite intent. *Id.* Arizona Revised Statute § 44-1004 provides a list of eleven non-exhaustive factors "that historically (since the Statute of 13 Elizabeth in 1572) have been regarded as circumstantial "badges of fraud" that are probative of intent."[1] *Id.*

55. The circumstantial evidence of badges of fraud in this case include, but may not be limited to:

    a. The transfer was made to benefit insiders, the Defendants. (A.R.S. § 44-1004(B)(1));

    b. The Debtor retained control of his interest in the Entities under the Agreement. (A.R.S. § 44-1004(B)(2));

    c. Upon information and belief, before the transfer was made, the Debtor had been threatened with suit. (A.R.S. § 44-1004(B)(4));

    d. Upon information and belief, the Debtor's interest in the Entities was substantially all of Debtor's assets. Indeed, Debtor's Schedules disclose approximately $189,752.00 in assets, of which $180,000.00 is the Debtor's homestead, illustrating the Debtor has de minimus assets when compared to the value of his interest in the Entities; (A.R.S. § 44-1004(B)(5));

    e. Upon information and belief, the Debtor received no consideration for making the transfer to the Defendants. (A.R.S. § 44-1004(B)(8));

---

[1] While *In re Beverly* examines Cal. Civ. Code 3439.04, like Arizona, California has also adopted the Uniform Fraudulent Transfer Act and Cal. Civ. Code 3439.04 is essentially identical to A.R.S. 44-1004. Indeed, the non-exhaustive factors giving rise to the "badges of fraud" while not verbatim, are nearly identical.

f.  Upon information and belief, the Debtor was insolvent when the transfer was made or became insolvent shortly thereafter (A.R.S. § 44-1004(B)(9)); and

g.  Upon information and belief, shortly after the transfer was made, Debtor still incurred substantial debts that it was unable to pay. (A.R.S. § 44-1004(B)(10)).

56.  Based on a review of the Debtor's Schedules and information available to the Plaintiff, Debtor was insolvent when the transfer was made (and continued to be insolvent thereafter).

57.  Pursuant to Debtor's Schedules, he had liabilities of $26,695,473.10 and assets of $189,752.00. (DE 9, pg. 1).

58.  Pursuant to Debtor's Schedules, Debtor is still liable for the Entity Liability, contrary to the Agreement.

59.  Upon information and belief, Debtor was unable to pay his debts as they came due.

60.  The foregoing evidence illustrates that a number of the badges of fraud are present in this case. (A.R.S. §§ 44-1001(B)(1), (2), (4), (5), (8), (9), and (10)).

61.  A debtor is insolvent when the sum of their debts is greater than the sum of their assets at fair market value. A.R.S. § 44-1002(A).

62.  The Debtor's liabilities were significantly greater than Debtor's assets, rendering the Debtor insolvent.

63.  The Plaintiff asserts that the foregoing cumulatively illustrates evidence sufficient to allow this Court to determine that in transferring his interest in the Entities, the Debtor had the intent to hinder, delay, or defraud creditors.

64.  Therefore, the transfer of Debtor's interest in the Entities is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

65.  Upon information and belief, Defendants are either the initial transferees/person who benefited from the transfer pursuant to 11 U.S.C. § 550(a)(1) or they are the subsequent/mediate transferee pursuant to 11 U.S.C. § 550(a)(2).

66.  Pursuant to 11 U.S.C. § 551, upon avoidance of the transfer, the transfer is preserved for the benefit of the Estate.

**WHEREFORE**, Plaintiff prays for judgment against Defendants (jointly and severally) as follows:

A.    Avoiding the transfer of the Debtor's interest in the Entities pursuant to 11 U.S.C. § 548(a)(1)(A);

B.    Pursuant to 11 U.S.C. § 550, directing Defendants to turn over Debtor's interest in the Entities or the entry of a judgment against Defendants in an amount to be proven at trial or in the event of default, a judgment in the amount of $1,000,000.00;

C.    Preserving the value of any judgment for the benefit of the Estate pursuant to 11 U.S.C. §551;

D.    For interest at the highest rate allowed by law from the date of the transfer until any judgment is paid in full; and

E.    For such other and further relief as this Court deems just and proper.

**COUNT THREE**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**[11 U.S.C. §§ Section 548(a)(1)(B), 550, and 551)]**

67.    Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

68.    Pursuant to 11 U.S.C. § 548(a)(1)(B), a transfer of an interest of the Debtor in property that is made within two years prior to the commencement of the bankruptcy case is constructively fraudulent if the Debtor received less than equivalent value for the property transferred and the Debtor were or became insolvent at the time of the transfer.

69.    Plaintiff asserts that Debtor received less than a reasonably equivalent value in exchange for the transfer of his interest in the Entities, as he did not receive any consideration as he was not released from the Entity Liability.

70.    Pursuant to the Agreement, Defendants agreed to release Debtor from any and all Entity Liability.

71.   As shown by Debtor's Schedules and as evidenced by the Proofs of Claim referenced herein, such release was not been granted. As such, Debtor received no value in exchange for the transfer of interest in the Entities.

72.   Plaintiff alleges that Debtor was insolvent when he transferred his interest in the Entities to the Defendants or became insolvent as a result of the transfers.

73.   Upon information and belief, when the Debtor's interest in the Entities were transferred, the Debtor intended to incur or believed it would incur debts that were beyond his ability to pay 11 U.S.C. § 548(a)(1)(B)(III).

74.   Upon information and belief, Debtor's interest in the Entities was transferred for the benefit of an insider pursuant to 11 U.S.C. § 548(a)(1)(B)(IV).

75.   Therefore, the transfer of the Debtor's interest in the Entities is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

76.   Upon information and belief, Defendants are either the initial transferees/person who benefited from the transfer pursuant to 11 U.S.C. § 550(a)(1) or they are the subsequent/mediate transferee pursuant to 11 U.S.C. § 550(a)(2).

77.   Pursuant to 11 U.S.C. § 550, Plaintiff may recover the equivalent value of the transferred value Debtor's interest in the Entities or the interests from the Defendants.

78.   Pursuant to 11 U.S.C. § 551, upon avoidance of the transfer, the transferred value is preserved for the benefit of the Estate.

79.   Pursuant to 11 U.S.C. §§548(a)(1)(B), 550, and 551, Plaintiff is entitled to an order of this Court requiring Defendants to turn over the value of the interest or in return of the interest to Plaintiff.

**WHEREFORE**, Plaintiff prays for judgment against Defendants(jointly and severally) as follows:

A. Avoiding the transfer of the Debtor's interest in the Entities pursuant to 11 U.S.C. § 548(a)(1)(B);

B. Pursuant to 11 U.S.C. § 550, directing Defendants to turn over Debtor's interest in the Entities or the entry of a judgment against Defendants in an amount to be proven

20

at trial or in the event of default, a judgment in the amount of $1,000,000.00;

C. Preserving the value of any judgment for the benefit of the Estate pursuant to 11 U.S.C. §551;

D. For interest at the highest rate allowed by law from the date of the transfer until any judgment is paid in full;  and

E. For such other and further relief as this Court deems just and proper.

**COUNT FOUR**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**[A.R.S. § 44-1004(A)(1)]**

80. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

81. Pursuant to A.R.S. § 44-1004(A)(1):

A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:

1. With actual intent to hinder, delay or defraud any creditor of the debtor.

82. A transfer is fraudulent as to a creditor if the Debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." A.R.S. § 44-1004(A)(1).

83. In determining whether a transfer is avoidable as a fraudulent transfer, the Court must determine whether the Debtors' transfer hindered or delayed a creditor of Debtors. *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part,* 551 F.3d 1092 (9th Cir. 2008).

84. Upon information and belief, when interest in the Entities was transferred, the Debtor had liabilities in excess of  $26,695,473.10. (BK DE 9, pg. 1).

85. Given direct evidence of fraud is uncommon, the Court may turn to inferential circumstances  consistent with the requisite intent. *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008).

86. As explained above, a number of the badges of fraud are present in this case. (A.R.S. §§ 44-1001(B)(1), (2), (4), (5), (8), (9), and (10)).

87.     The Debtor's interest in the Entities was property of the Estate pursuant to 11 U.S.C. § 541.

88.     The Debtor has an interest in any property that would have been property of the bankruptcy estate, if not for the transfer. *Diamond v. Hogan Lovells US LLP*, 883 F.3d 1140, 1147 (9th Cir. 2018), *certified question answered*, 224 A.3d 1007 (D.C. 2020) citing *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Therefore, the Debtor had an interest in the Entities.

89.     Debtor's alleges voluntary transfer under the Agreement of his interest in the Entities constitutes a "transfer" as defined in 11 U.S.C. § 101(54).

90.     The Plaintiff asserts that the foregoing cumulatively illustrates evidence sufficient to allow this Court to determine that in transferring the interest in the Entities, the Debtor had the intent to hinder, delay, or defraud creditors pursuant to A.R.S. § 44-1004(A)(1).

91.     Pursuant to 11 U.S.C. § 550, Plaintiff may recover a judgment for the value of the interest or return of the interest.

92.     Upon information and belief, Defendants are either the initial transferees/person who benefited from the transfer pursuant to 11 U.S.C. § 550(a)(1) or they are the subsequent/mediate transferee pursuant to 11 U.S.C. § 550(a)(2).

93.     Pursuant to 11 U.S.C. § 550, Plaintiff may recover the equivalent value of the transferred value Debtor's interest in the Entities or the interests from the Defendants.

94.     Pursuant to 11 U.S.C. § 551, upon avoidance of the transfer of the Real Property, the value of the judgment obtained shall be preserved for the benefit of the Estate.

WHEREFORE, Plaintiff prays for judgment against Defendants (jointly and severally) as follows:

    A.  Avoiding the transfer of the Debtor's interest in the Entities pursuant to A.R.S. § 44-1004(A)(1);

    B.  Pursuant to 11 U.S.C. § 550, directing Defendants to turn over Debtor's interest in the Entities or the entry of a judgment against Defendants in an amount to be proven at trial or in the event of default, a judgment in the amount of

22

$1,000,000.00;

C. Preserving the value of any judgment for the benefit of the Estate pursuant to 11 U.S.C. §551;

D. For interest at the highest rate allowed by law from the date of the transfer of the Real Property until any judgment is paid in full; and

E. For such other and further relief as this Court deems just and proper.

## COUNT FIVE
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER
### [A.R.S. § 44-1004(A)(2)]

95. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

96. Pursuant to A.R.S. § 44-1004(A)(2):
A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:…

1. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

    a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

    b. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

97. Debtor transferred interest in the Entities for no consideration when, upon information and belief, the interests are valuable. Therefore, the transfer was for less than reasonably equivalent value.

98. At the time of the transfer, the Debtor was insolvent.

99. Upon information and belief, when Debtor transferred his interest in the Entities to the Defendants, Debtor had liabilities in excess of $26,695,473.10. (BK DE 9, pg. 1).

100. Upon information and belief, at the time of the transfer, Debtor was in default of a myriad of ongoing liabilities and Debtor was not paying his ongoing liabilities as they came due.

101. Pursuant to 11 U.S.C. § 101(32)(A), insolvency means when an entity's financial condition is such that the sum of its debts is greater that the fair market value of its property (excluding the transferred property and exempt property).

102. Upon information and belief, the Debtor was insolvent when his interest in the Entities was transferred to Defendants.

103. Upon information and belief, the interest in the Entities was the only valuable asset of the Debtor at time of petition.

104. Upon information and belief, when interest in the Entities was transferred to the Defendants, the Debtor was engaged or about to engage in business/transactions for which his remaining assets were unreasonably small in relation to the business/transaction.

105. Upon information and belief, when the Debtor's interest in the Entities was transferred to Defendants, the Debtor intended to incur or believed or reasonably should have believed he would not be able to pay their debts as they came due.

106. A debtor is insolvent when the sum of their debts is greater than the sum of their assets at fair market value. A.R.S. § 44-1002(A).

107. As explained above, when the interest in the Entities was transferred, Debtor was insolvent.

108. The Plaintiff asserts that the foregoing cumulatively illustrates evidence sufficient to allow this Court to determine that in transferring the interest in the Entities, the Debtor did not receive reasonably equivalent value and: (1) Debtor was engaged in business/transactions for which his remaining assets were unreasonably small with relation to the business/transaction; and/or (2) Debtor intended to incur or believed or reasonably should have believed he would incur debts beyond his abilities to pay them as they came due. A.R.S. § 44-1004(A)(2).

109. Pursuant to 11 U.S.C. § 550, Plaintiff may recover a judgment for the value of the interest in the Judgment or return of the interest.

110. Upon information and belief, Defendants are either the initial transferees/person who benefited from the transfer pursuant to 11 U.S.C. § 550(a)(1) or they are the subsequent/mediate transferee pursuant to 11 U.S.C. § 550(a)(2).

111. Pursuant to 11 U.S.C. § 550, Plaintiff may recover the equivalent value of the transferred value Debtor's interest in the Entities or the interests from the Defendants.

112. Pursuant to 11 U.S.C. § 551, upon avoidance of the transfer of the Real Property, the value of the judgment obtained shall be preserved for the benefit of the Estate.

WHEREFORE, Plaintiff prays for judgment against Defendants (jointly and severally) as follows:

> A. Avoiding the transfer of the Debtor's interest in the Entities pursuant to A.R.S. § 44-1004(A)(2);
>
> B. Pursuant to 11 U.S.C. § 550, directing Defendants to turn over Debtor's interest in the Entities or the entry of a judgment against Defendants in an amount to be proven at trial or in the event of default, a judgment in the amount of $1,000,000.00;
>
> C. Preserving the value of any judgment for the benefit of the Estate pursuant to 11 U.S.C. §551;
>
> D. For interest at the highest rate allowed by law from the date of the transfer of the Real Property until any judgment is paid in full;  and
>
> E. For such other and further relief as this Court deems just and proper.

## COUNT SIX
## TURNOVER OF PROPERTY
### [11 U.S.C. §§ 541 and 542]

113. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

114. Section 541 provides that upon the commencement of this case, among the assets of the Estate is "…all legal or equitable interest of the debtor in property…".

115. The Debtor's interest in the Entities are property of the Estate pursuant to 11 U.S.C. § 541(a) to the extent they were not transferred pre-petition.

116. Upon information and belief, Defendants remains in possession, custody, and control of the Debtor's interest in the Entities.

25

117.    Notwithstanding demand, Defendants have failed to deliver to turn over the Debtor's interest in the Entities.

118.    Section 542(a) provides that any entity in possession, custody, or control of Estate Property "shall deliver to the trustee, and account for, such property or the value of such property...".

119.    Given the Debtor's interest in the Entities are property of the Estate, Defendant shall deliver them to the Estate pursuant to 11 U.S.C. § 542(a).

120.    Pursuant to 11 U.S.C. § 542(a), Defendant should also provide an accounting of any and all interest the Estate is entitled to arising from the Debtor's interest in the Entities; this includes but is not limited to: (a) access to the Entities' respective books and records; (b) an accounting of any and all distributions made to any Defendant from any Entity since November of 2022; (c) updated profit and loss statements and balance sheets; and (d) any and all information related to operation or valuation of the Entities.

121.    Plaintiff is entitled to judgment requiring Defendant to turn over to Plaintiff the Debtors interest in the Entities or for a judgment of the value of the Debtor's interest in the Entities (including applicable interest).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendants (jointly and severally) as follows:

A. For judgment against the Defendants directing Defendants to turn over Debtor's interest in the Entities to the Estate or in the alternative, a judgment for the damages incurred by the Estate in an amount to be proved at trial or in the event of default judgment, a judgment entered in the amount of $1,000,000.00;

B. For reasonable attorney fees associated with bringing this action;

C. For costs allowed by law; and

D. For such other relief the Court deems just and property.

## COUNT SEVEN
## AVOIDANCE OF POST-PETITION TRANSFER OF PROPERTY
## [11 U.S.C. §§ 549, 550, and 551]

122. Plaintiff hereby repeats, reiterates, and realleges all of the foregoing allegations as if more fully set forth herein.

123. Pursuant to 11 U.S.C. § 549:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –

(1) that occurs after the commencement of the case; and

(2)
(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

124. "The purpose of section 549 is to allow the trustee to avoid those post-petition transfers which deplete the estate while providing limited protection to transferees who deal with the debtor." *Est. of BG Petroleum, LLC v. Cmty. State Bank of Orbisonia*, No. 3:22-CV-39, 2023 WL 171769, 5 (W.D. Pa. Jan. 12, 2023) *citing In re Taft*, 262 B.R. 55, 60 (Bankr. M.D. Pa. 2001).

125. The trustee may avoid post-petition transfers of "property of the estate." 11 U.S.C. § 549(a); 11 U.S.C. § 541(a)(1); *Est. of BG Petroleum, LLC v. Cmty. State Bank of Orbisonia*, No. 3:22-CV-39, 2023 WL 171769, 5 (W.D. Pa. Jan. 12, 2023);

126. Property of the estate is defined as, *inter alia,* property in which the debtor has "legal or equitable interests ... as of the commencement of the case." 11 U.S.C. § 541(a)(1).

127. "So what matters [under Section 549] is not what effect the transfer had on the estate, but whether the Debtor transferred property that did not belong to her and without the right to do so." *Est. of BG Petroleum, LLC v. Cmty. State Bank of Orbisonia*, No. 3:22-CV-39, 2023 WL 171769, 5 (W.D. Pa. Jan. 12, 2023) citing *In re White*, 2019 WL 3729636, 2019 Bankr. LEXIS 2451 (Bankr. E.D. Pa. Aug. 7, 2019), *aff'd*, 2020 WL 1539928, 2020 U.S. Dist. LEXIS 56395 (E.D. Pa. Mar. 31, 2020).

128.     Pursuant to Section 549, for a transfer to be avoidable, the following four elements must be met: (1) a transfer; (2) of property of the Estate; (3) made after commencement of the case; and (4) that is not authorized by the bankruptcy Code of Bankruptcy Court. *Reish v. Phoenix Heliparts, Inc.*, No. 20-17329, 2021 WL 6103054, 2 (9th Cir. Dec. 23, 2021); *In re Straightline Invs., Inc.*, 525 F.3d 870, 877 (9th Cir. 2008); *see also In re Cir. City Stores, Inc.*, No. 08-35653-KRH, 2022 WL 17722849, 6 (Bankr. E.D. Va. Dec. 15, 2022); *In re Merry-Go-Round Enters.*, 400 F.3d 219, 224 (4th Cir. 2005) (citing *In re LWMcK* 196 B.R. 421, 423 (Bankr. S.D. Ill. 1996); *In re Watson*, 65 B.R. 9, 11 (Bankr. C.D. Ill. 1986)).

129.     Section 550(a) of the Bankruptcy Code provides that the Trustee may recover the value of the transferred property. 11 U.S.C. § 550(a), *see also Reish v. Phoenix Heliparts, Inc.*, No. 20-17329, 2021 WL 6103054, 2 (9th Cir. Dec. 23, 2021).

130.     The trustee may seek recovery from either "the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transferee." *Id.* §§ 550(a)(1), (2).

131.     The trustee's power to recover from an initial transferee or the entity for whose benefit such transfer was made is absolute. *In re Cir. City Stores, Inc.*, No. 08-35653-KRH, 2022 WL 17722849, 6 (Bankr. E.D. Va. Dec. 15, 2022); *In re Se. Hotel Props. Ltd. P'shp.*, 99 F.3d 151, 154 (4th Cir. 1996).

132.     To the extent Debtor's interest in the Entities was transferred post-petition, pursuant to 11 U.S.C. § 549(a)(1), such a transfer would be after the commencement of the case.

133.     The Plaintiff can recover the value of the transfer Debtor's interest in the Entities from the Defendants as either the initial transferee or subsequent transferee.

134.     Pursuant to 11 U.S.C. § 549(a)(2)(B), the transfer of the Debtor's interest in the Entities was not authorized under the Bankruptcy Code and was not authorized by the Bankruptcy Court.

135.     Defendants had actual notice of this bankruptcy case as of the Petition Date. (BK DE 9, pg. 47 ⁋ 4.92; BK DE 9, pg. 29 ⁋ 4.44; BK DE 5-6).

136. Upon information and belief, Defendants were not a good faith transferee without knowledge of the commencement of the case.

137. Upon information and belief, Defendants took the Debtor's interest in the Entities for less than fair market value.

138. Upon information and belief, the transfer of the Debtor's interest in the Entities to Defendants was not an arm's length transaction.

139. Defendants took the Debtor's interest in the Entities for less reasonably equivalent value.

140. Therefore, the transfer of the Debtor's interest in the Entities is avoidable pursuant to 11 U.S.C. § 549(a) and the value of the transfer is recoverable by the Estate.

141. Pursuant to 11 U.S.C. § 550, Plaintiff may recover the equivalent value of the transfer from Defendants as either the initial transferee or as the subsequent transferee/persons who benefited from the transfer.

142. Pursuant to 11 U.S.C. § 551, upon avoidance of the transfer, the value of the transfer is preserved for the benefit of the Estate.

WHEREFORE, Plaintiff prays for judgment against Defendants (jointly and severally) as follows:

A. For an Order avoiding the post-petition transfer of the Debtor's interest in the Entities, preserving it for the benefit of the Estate, and a judgment against Defendants in the amount to be proven at trial or in the event of default, a judgment in the amount of $1,000,000.00;

B. For interest at the highest rate allowed by law from the date of the transfer until any judgment is paid in full;

C. For Plaintiff's reasonable attorney fees and costs and in the minimum of $2,500.00 in the event a default judgment is obtained; and

D. For such other and further relief as this Court deems just and proper

DATED: October 29, 2024.

**LANE & NACH, P.C.**

By: */s/ Helen K. Santilli*
      Stuart B. Rodgers
      Helen K. Santilli
      *Attorneys for Trustee*

30

# EXHIBIT "A"

# RESIGNATION AGREEMENT

This Resignation Agreement is entered into and effective as of November 8, 2022, by and among Coda Design + Build LLC; Coda Management Group; Platform II Lawndale LLC; Coda Holding LLC; Coda Holding II LLC; Coda Holding III LLC; Coda Holding IV LLC; CHIW LLC; Platform II Wisconsin LLC; Platform II Superior LLC; Platform III Third LLC; Platform III Lansing LLC; Coda Opportunity Fund LLC; Coda Opportunity Fund II LLC; Scott Krone; James Lehmann; and Martin Taradejna.

## RECITALS

Whereas, Scott Krone, James Lehmann, and Martin Taradejna are members and managers of various corporate entities. On August 5, 2022, Martin Taradejna notified Scott Krone and James Lehmann in writing of his resignation as an employee from Coda Design + Build, as well as his role as Manager for the various Corporate Parties listed hereinafter.

Whereas, Scott Krone, James Lehmann, Martin Taradejna, and the Corporate Parties wish to forever remove Martin Taradejna from their business ventures and to allow the other Parties to continue the businesses without interference or the involvement of the others.

Whereas, Scott Krone, James Lehmann, Martin Taradejna, and the Corporate Parties recognize that there is no perfect solution to the resignation by Martin Taradejna, and that this agreement represents the terms and conditions presented to Krone and Lehmann by Taradejna, and all Parties agree they represents a fair, equitable, and reasonable solution that is in the best interests of all parties.

## DEFINITIONS

1. "Corporate Parties" – shall mean Coda Design + Build LLC; Coda Management Group; Platform II - Lawndale LLC; Coda Holding LLC; Coda Holding II LLC; Coda Holding III LLC; Coda Holding IV LLC; CHIW LLC; Platform II - Wisconsin LLC; Platform II - Superior LLC; Platform III - Third LLC; Platform III - Lansing LLC; Coda Opportunity Fund LLC; Coda Opportunity Fund II LLC; and any other entity in which Martin Taradejna, Scott Krone, and James Lehmann are both members or managers.

2. "Individual Parties" – shall mean Scott Krone ("Krone"), James Lehmann ("Lehmann") and Martin Taradejna ("Taradejna").

3. "Parties" – shall mean the Corporate Parties and Individual Parties.

4. "Effective Date" – shall mean November 8, 2022 and refers to the effective date of this Agreement.

5. "Coda" – shall mean Coda Design + Build, Coda Management Group, One Stop Self Storage, or Corporate Parties herein listed above.

## ARTICLE I – DISMISSAL, RELEASES AND PAYMENT

6. <u>Mutual General Releases, Hold Harmless and Indemnity</u>.  Except as specifically stated in this Agreement, the Parties agree to release any and all existing claims, known or unknown, against the other existing at the time of this agreement and as set forth below:

   6.1. "*Releasing Parties*" means, with respect to Corporate Parties, each of the Corporate Parties on behalf of itself and each of its parent entities, subsidiaries and divisions, directors, members, managers, employees and agents and each of their respective estates, heirs, successors and assigns.  "*Releasing Parties*" means, with respect to Individual Parties, Scott Krone, James Lehmann and Martin Taradejna on behalf of themselves and agents and each of their respective estates, heirs, successors and assigns.

   6.2. "*Released Parties*" means, with respect to Corporate Parties, each of the Corporate Parties on behalf of itself and each of its parent entities, subsidiaries and divisions, directors, members, managers, employees and agents and each of their respective estates, heirs, successors and assigns.  "*Released Parties*" means, with respect to Individual Parties, Scott Krone, James Lehmann and Martin Taradejna on behalf of themselves and agents and each of their respective estates, heirs, successors and assigns.

   6.3. Each of the Releasing Parties releases and discharges each of the Released Parties from any and all claims arising from or related to any act or omission of any of the Released Parties from the beginning of time to the effective date.

   6.4. Under this Agreement the Parties contemplate that various business interests are being relinquished by Taradejna.  The person or entity that obtains such an interest takes that interest "as is" without any further representations or warranties.

   6.5. Each of the Releasing Parties indemnifies and hold harmless each of the Released Parties from any and all claims arising from or related to any entity which the Releasing Party is obtaining under <u>Article II of this Agreement</u>.

7. <u>Payment Terms.</u>

   7.1. Taradejna agrees the resignation was voluntary in nature.  Taradejna further agrees that he alone was the sole decision maker to resign, and no further compensation, worker's unemployment, or any other fees, payments, buyouts, or any other form of compensation is due either at the time of resignation, as of the Effective Date, or anytime hereinafter.

   7.2.

## ARTICLE II – ENTITIES IN WHICH TARADEJNA RELINQUISHES ALL RIGHTS

8. <u>Coda Design + Build LLC</u>

8.1. Taradejna resigned as an employee effective August 23, 2022. Taradejna resigns his duties as Director of Sales and Acquisitions, marketing, investor relations, investor capital sales, asset manager, sales and acquisitions.

8.2. The Parties agree that no further documentation is necessary to effectuate resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

9. Coda Management Group

9.1. Taradejna resigned as an employee effective August 23, 2022.

9.2. The Parties agree that no further documentation is necessary to effectuate resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request. Taradejna resigns his duties as Director of Sales and Acquisitions, marketing, investor relations, investor capital sales, asset manager, sales and acquisitions.

10. Platform II – Lawndale LLC

10.1. Taradejna agrees that he has Twenty Three point Three percent (23.3%) ownership shares as a manager in Platform II - Lawndale LLC. In addition, Taradejna agrees that the building is in a transition period including the lease up.

10.2. Taradejna agrees and acknowledges Platform II – Lawndale as of the date of this Agreement is in Chapter 11 Bankruptcy Court, and prior to Taradejna's resignation. Taradejna further acknowledges that he was aware and supported the filing. Taradejna agrees to assist and cooperate with Platform II – Lawndale's efforts to move out of Chapter 11 by supplying any and all required personal documents requested by lenders.

10.3. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform II Lawndale. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform II – Lawndale within 5 days of the cause of the default.

10.4. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform II Lawndale LLC in exchange of release from all personal guarantees or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

-3-

10.5. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. To avoid a default in the loan, the Parties agree to complete the Resignation upon the next refinance of the property. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

10.6. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

10.7. Coda shall remove Taradejna from the loan and loan guaranty in the due course of the company. Taradejna shall cooperate in this process by executing the necessary bank documents provided by Coda, if any, to accomplish his removal. The parties recognize and acknowledge that removal from the loan and guaranty requires the assent of third parties and that such assent is beyond the control of the Parties. For clarification purposes, the removal of Taradejna from the loan guaranty and transfer of ownership shares will occur simultaneously and not one prior to the other.

## 11. Platform II – Wisconsin LLC

11.1. Taradejna agrees that he has ownership shares as a manager in Platform II - Wisconsin LLC as a Manager of CHIW LLC. In addition, Taradejna agrees that the building is in a transition period including the lease up. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform II Wisconsin. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform II – Wisconsin within 5 days of the cause of the default.

11.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform II Wisconsin LLC in exchange of release from all personal guarantees or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

11.3.  Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. To avoid a default in the loan, the Parties agree to complete the Resignation upon the next refinance of the property. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

11.4.  Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

11.5.  Coda shall remove Taradejna from the loan and loan guaranty in the due course of the company. Taradejna shall cooperate in this process by executing the necessary bank documents provided by Coda, if any, to accomplish his removal. The parties recognize and acknowledge that removal from the loan and guaranty requires the assent of third parties and that such assent is beyond the control of the Parties. For clarification purposes, the removal of Taradejna from the loan guaranty and transfer of ownership shares will occur simultaneously and not one prior to the other.

12. Platform II – Superior LLC

12.1.  Taradejna agrees that he has ownership shares as a manager in Platform II - Superior LLC as a Manager of Coda Holding II LLC. In addition, Taradejna agrees that the building is in a transition period including the lease up. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform II Superior. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform II – Superior within 5 days of the cause of the default.

12.2.  Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform II Superior LLC in exchange of release from all personal guarantees or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

12.3.     Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. To avoid a default in the loan, the Parties agree to complete the Resignation upon the next refinance of the property. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

12.4.     Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

12.5.     Coda shall remove Taradejna from the loan and loan guaranty in the due course of the company. Taradejna shall cooperate in this process by executing the necessary bank documents provided by Coda, if any, to accomplish his removal. The parties recognize and acknowledge that removal from the loan and guaranty requires the assent of third parties and that such assent is beyond the control of the Parties. For clarification purposes, the removal of Taradejna from the loan guaranty and transfer of ownership shares will occur simultaneously and not one prior to the other.

13. Platform III – Third LLC

13.1.     Taradejna agrees that he has ownership shares as a manager in Platform III - Third LLC as a Manager of Coda Holding III LLC. In addition, Taradejna agrees that the building is in a transition period including the lease up. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform III - Third. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform III – Third within 5 days of the cause of the default.

13.2.     Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform III - Third LLC in exchange of release from all personal guarantees

-6-

or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

13.3.     Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. To avoid a default in the loan, the Parties agree to complete the Resignation upon the next refinance of the property. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

13.4.     Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation.   Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

13.5.     Coda shall remove Taradejna from the loan and loan guaranty in the due course of the company. Taradejna shall cooperate in this process by executing the necessary bank documents provided by Coda, if any, to accomplish his removal. The parties recognize and acknowledge that removal from the loan and guaranty requires the assent of third parties and that such assent is beyond the control of the Parties. For clarification purposes, the removal of Taradejna from the loan guaranty and transfer of ownership shares will occur simultaneously and not one prior to the other.

14. Platform III – Floyd LLC

14.1.     Taradejna agrees that he has ownership shares as a manager in Platform III - Floyd LLC as a Manager of Coda Holding IV LLC. In addition, Taradejna agrees that the building is in a transition period including the construction. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform III - Floyd. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform III – Floyd within 5 days of the cause of the default.

14.2.     Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or

relating to Platform III - Floyd LLC in exchange of release from all personal guarantees or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

14.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree to complete the Resignation immediately. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

14.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

15. Platform III – Lansing LLC

15.1. Taradejna agrees that he has ownership shares as a manager in Platform III - Lansing LLC as a Manager of Coda Holding IV LLC. In addition, Taradejna agrees that the building is in a transition period including the construction. As such, any material change of ownership or financial conditions may cause the loan to be in default. In addition, annual personal financial statements and taxes are required by the lender. Taradejna agrees to provide his taxes or personal financial statement within 5 days of notice by Platform III - Lansing. Individual Parties agree that additional documents require signatures, and Taradejna agrees to cooperate in executing necessary documents within 5 days of receipt. Taradejna has reviewed and is aware of the conditions of the loan and requirements to keep it in good standing. Should an action, condition, or circumstance by Taradejna create or cause the loan to be in default, Taradejna shall notify Platform III – Lansing within 5 days of the cause of the default.

15.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC within his former role with either Coda Design + Build or Coda Management Group. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Platform III - Lansing LLC in exchange of release from all personal guarantees or other financial obligations. Upon the completion of the resignation, both Taradejna and Coda agree to cross indemnify one another.

15.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree to complete the Resignation immediately. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final

resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

15.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

## 16. Coda Holding LLC

16.1. Taradejna agrees that he has Forty point Five percent (40.5%) ownership shares as a manager in Coda Holding LLC. In addition, Taradejna agrees that Coda Holding was formerly the Manager for Platform II Wisconsin which was replaced by CHIW LLC.

16.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC as the Manager for Platform II Wisconsin. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Coda Holding LLC in exchange of release from all personal guarantees or other financial obligations. Taradejna agrees to transfer his managerial and economic shares to Krone and Lehmann.

16.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

16.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

16.5. Loans by MT under CH (please identify which loans you created and solely guaranteed)

## 17. Coda Holding II LLC

17.1. Taradejna agrees that he has Forty point Five percent (40.5%) ownership shares as a manager in Coda Holding II LLC.

17.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC as the Manager for Platform II Superior. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Coda Holding II LLC in exchange of release from all personal guarantees or other financial obligations. Taradejna agrees to transfer his managerial and economic shares to Krone and Lehmann.

17.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree that upon the final transfer of Taradejna's ownership shares, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

17.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

18. Coda Holding III LLC.

18.1. Taradejna agrees that he has Nineteen percent (19%) ownership shares as a manager in Coda Holding III LLC.

18.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC as the Manager for Platform III – Floyd. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Coda Holding III LLC in exchange of release from all personal guarantees or other financial obligations. Taradejna agrees to transfer his managerial and economic shares to Krone and Lehmann.

18.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

18.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is

Case 2:24-ap-00239-BKM    Doc 1    Filed 10/29/24    Entered 10/29/24 13:01:42    Desc
Main Document    Page 41 of 47

necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

19. Coda Holding IV LLC

19.1. Taradejna agrees that he has Thirty Three point Three Three percent (33.33%) ownership shares as a manager in Coda Holding IV LLC.

19.2. Taradejna agrees to cooperate in the management of the LLC to the extent necessary to comply with lender requirements. Taradejna relinquishes the managerial rights to day to day operations of the LLC as the Manager for Platform IV – Lansing. Taradejna relinquishes all membership rights, managerial rights, economic interests, financial interests, rights to future revenues, rights to proceeds, rights to distributions and all other interest or rights in or relating to Coda Holding IV LLC in exchange of release from all personal guarantees or other financial obligations. Taradejna agrees to transfer his managerial and economic shares to Krone and Lehmann.

19.3. Taradejna hereby resigns as a manager effective upon the transfer or sale of his ownership shares. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute documents further evidencing the resignation upon reasonable request.

19.4. Taradejna hereby agrees to transfers any and all of his interest (including but not limited to any membership or managerial interest) to Coda or such person or entity as Coda shall designate. The Parties agree that upon the final transfer of Taradejna's ownership share, documentation to finalize the removal of his role as manager is necessary to effectuate the final resignation. Nevertheless, to the extent it becomes necessary, the Parties agree to execute additional documents further evidencing the transfer upon request.

## ARTICLE VI – ADDITIONAL PROVISIONS

20. Additional Documents and Actions.

20.1. The Parties acknowledge their mutual desire to enter into this agreement at this time, and likewise acknowledge that as to certain aspects of the agreement, achieving the parties' intentions as set forth herein may require certain organizational actions, such as the execution of resolutions or obtaining consents from members or managers of the various entities. The parties agree to take and consent to all steps that may be required to effectuate the intent of this agreement, including seeking the approval of others for such consents or resolutions, and if necessary, to recharacterizing transactions in order to comply with applicable statutes, operating agreements and other corporate governance documentation.

20.2. The Parties acknowledge that removing persons from the loans and guaranties will likely require the acceptance of new managers or members to serve in their place. The Parties further acknowledge that this may require the transfer of membership or

other interests to such person. Each signatory to this Agreement, including each of the Parties, assents to the addition of such manager and/or member and will not impede or interfere with this process of obtaining new members and managers.

21. Good Faith Clause. The Parties acknowledge that they will act in good faith in relation to their obligations under this Agreement. They further acknowledge that this Agreement is intended to resolve all roles and responsibilities of Taradejna relating to the subject matter of this Agreement and that going forward they will avoid causing undue harm or injury to the business ventures of the other. They further agree not to disparage one another or to encourage others to file legal actions.

22. Attorney Fee Provision For Material Breach. To the extent that Krone, Lehmann or Taradejna materially breach the Agreement, the prevailing party in any litigation shall be entitled to reasonable attorney's fees.

23. Choice of Law and Forum. This Agreement is entered into in the State of Illinois. This Agreement and any rights, remedies, or obligations provided for in this Agreement shall be construed and enforced in accordance with the laws of the State of Illinois without regard to the conflict's provisions thereof. Any and all disputes that in any way arise out of or bear any relationship with this Agreement shall be litigated only in the State or Federal courts in Cook County, Illinois.

24. Representation by Counsel. The Parties each represent and acknowledge that they have had the opportunity to be represented by counsel of their own choosing in connection with the negotiation, review, and execution of this Agreement and the accompanying releases contained herein.

25. The Parties' Representations and Warranties.
   25.1.    The Parties hereby warrant, represent and acknowledge to each other that: (a) they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the shares covered by this Agreement; (b) the consideration they received in connection with this Agreement is fair and reasonable, and constitutes lawful consideration supporting the execution and enforceability of this Agreement; (c) individually and/or through their duly authorized attorneys or representatives, they have carefully read and reviewed all provisions of this Agreement in full, and they understand the terms of this Agreement and voluntarily agree to be bound thereby; (d) they are entering into this Agreement based solely and exclusively upon their and their attorney's own analysis of the relevant facts and/or other information, and not in reliance upon any statements and/or representations made by any other party to this Agreement; and, (e) they have read and understand the terms of this Agreement, and that they voluntarily accept the same.
   25.2.    The Individual Parties further represent that they have not sold, assigned, transferred conveyed or otherwise disposed of any interest (including but not limited to the membership or managerial interest) in any of the Corporate Parties and that they have the authority to transfer, assign or otherwise dispose of that interest and as set forth in this agreement.

26. Binding Effect. This Agreement shall be binding upon and shall inure to the benefit and/or detriment of the Parties and their respective heirs, beneficiaries, guardians, administrators,

trustees, executors and executrixes, agents, principals, representatives, successors, and assigns.

27. <u>Merger and Integration.</u> The Parties represent and acknowledge that this Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between and among the Parties and regarding the releases set forth herein, and that all prior agreements, contracts, negotiations, promises, offers, acceptances, representations, warranties, covenants and understandings in any way relating to this Agreement and the releases set forth herein are merged and integrated into the terms and conditions of this Agreement. The parties represent that they are not relying on any representations outside of the express terms of this Agreement. .

28. <u>Confidential.</u> The Parties agree that the terms, conditions, and substance of this Agreement, including specifically but without limitation the payment terms, which are the subject of this Agreement, shall be deemed confidential and shall be kept confidential by them and all of its agents, representatives, employees and attorneys and shall not be disclosed at any time to any person or entity without the prior express written consent of the other Party: (1) as necessary in the course of preparing and filing appropriate tax returns or dealing with federal or state taxing authorities and only to those tax preparers or taxing authorities with a clear need to know; and (2) in the performance of personal or business financial planning and only to those business or financial planners with a clear need to know. If disclosure of information is made pursuant to subsections (1) or (2) above, the information shall still be deemed confidential. In addition, any term hereof may be disclosed during any lawsuit or other proceeding brought to enforce the terms of this Agreement or as required pursuant to legal subpoena or court order. Notwithstanding anything to the contrary, the Parties can disclose that they have entered into a confidential resignation agreement to resolve Taradejna's resignation as members and managers of the corporate entities and have relinquished their membership interests in the entities. The Parties can also disclose the provisions showing that interest of the various members and or managers have been modified.

29. <u>Business Records and Information.</u>

29.1.   The Individual Parties agree to provide (or otherwise make available) the other the relevant business records or personal items in their possession, custody and control for the entities in which each Individual Party is retaining control. By way of example, this includes copies of the accounting files, back up materials for transactions, and other documentation needed to operate the business and or to understand transactions. This provision shall not be imposed on the other to create an undue burden or be used to track down every scrap of paper on every transaction. Neither party will make a blanket demand for "all books and records" and instead will use his best efforts to specifically identify information that is needed to operate the business.

29.2.     The Individual Parties agree that any communications (mail, e-mail, voice-mail, etc.) that is received after the Effective Date will be forwarded to the appropriate person within a reasonable time and that they will take reasonable steps to have such communications directed to the proper person at the company.

29.3.     Taradejna agrees to turn over all keys, codes and other methods of access to the respective properties. Taradejna agrees to remove from all social media or other forms of marketing his employment from Coda Design + Build LLC or Coda Management Group. Taradejna also agrees not to trade, market or otherwise gain market advantage using the tools, systems, procedures, resources or means and methods, of either Coda Design + Build or Coda Management. Taradejna may not use said resources without the express written consent of Coda. In the event Taradejna employs said resources without the express written consent of Coda, Coda has the right to damages as governed by the State of Illinois. Prevailing party shall be able to recover attorney fees to recover said resources and damages.

30. Counterparts. This Agreement may be executed in multiple counterparts. Copies and facsimile copies of signature pages shall be deemed to be originals for any and all purposes.

31. Amendments. This agreement may only be amended or modified in writing signed by the Parties.

34. Notice Provision. All notices required to be given under the terms of this Agreement or which any of the Parties desires to give hereunder shall be in writing and personally delivered or sent by registered or certified mail, return receipt requested, or Federal Express, addressed as follows:

To Taradejna:

   Martin Taradejna
   2619 E Danbury Rd
   Phoenix, AZ 85032

   with a copy by mail and email to:

To Krone and Lehmann:

   Coda
   600 Waukegan Road, Ste. 129
   Northbrook, IL 60062

-14-

with a copy by mail and email to:

Jeff Galkin
Levin Ginsburg
130 N. LaSalle
Chicago, IL

32. Any Party may designate a change in address at any time in writing to the other party.

[Remainder of the page intentionally left blank]

**Martin Taradejna**  **Date**

**Scott Krone**  **Date**  11.8.22

**Martin Taradejna**  **Date**
on behalf of (i) Platform II - Lawndale, (ii)
Coda Holding LLC, (iii) Coda Holding II
LLC, (iv) Coda Holding III LLC, (v) Coda
Holding IV LLC, (vi) CHIW LLC, (vii)
Platform II - Wisconsin LLC, (viii)
Platform II - Superior LLC, (ix) Platform -
III Third LLC, (x) Platform III - Lansing
LLC, (xi) Coda Opportunity Fund LLC,
(xii) Coda Opportunity Fund II LLC, (xiii)
Coda Management Group

**Scott Krone**  **Date**  11.8.22
on behalf of (i) Platform II - Lawndale, (ii)
Coda Holding LLC, (iii) Coda Holding II
LLC, (iv) Coda Holding III LLC, (v) Coda
Holding IV LLC, (vi) CHIW LLC, (vii)
Platform II - Wisconsin LLC, (viii) Platform
II - Superior LLC, (ix) Platform III - Third
LLC, (x) Platform III - Lansing LLC, (xi)
Coda Opportunity Fund LLC, (xii) Coda
Opportunity Fund II LLC, (xiii) Coda
Management Group, (xiv) Coda Design +
Build, LLC.

**James Lehmann**  **Date**

**James Lehmann**  **Date**
(i) Coda Holding LLC, (ii) Coda Holding II
LLC, (iii) Coda Holding III LLC, (iv) Coda
Holding IV LLC, (v) CHIW LLC, (vi)
Platform II - Wisconsin LLC, (vii) Platform
II - Superior LLC, (viii) Platform III - Third
LLC, (ix) Platform III - Lansing LLC, (x)
Coda Opportunity Fund LLC, (xi) Coda
Opportunity Fund II LLC